Campbell, Chief Justice,
reviewing the facts found to be established, delivered the opinion of the court:
On the 1st day of July, 1914, there was a vacancy in the grade of lieutenant commander in the Navy. The plantiff was a lieutenant in the Navy, and on the 1st day of July, 1914, became eligible to promotion to said vacancy, subject to the examination required by law. He reported for examination and the board of medical examiners found him incapacitated for active service by reason of some physical ailment. He was subsequently ordered to proceed at his own expense to the Naval Hospital at Washington for op *238 erative treatment, where he reported on November 3, 1914. He was discharged from treatment on January 4,1915. On February 12, 1915, he was directed to report for examination for promotion in the Atlantic Fleet. He was found duly qualified, and under date of April 27, 1915, during the recess of the Senate, a commission was issued to him by the President appointing him a lieutenant commander in the Navy with rank from the 1st day of July, 1914. On December 6,1915, he was nominated to the Senate for appointment as a lieutenant commander from July 1,1914, was confirmed by the Senate on January 5, 1916, and on January 25, 1916, the President executed a commission to him as lieutenant commander to rank from July 1, 1914. The vacancy which existed on July 1, 1914, in the number of lieutenant commanders continued from that date until plaintiff’s recess appointment and was not thereafter filled except by the appointment, confirmation, and subsequent commission of plaintiff.
The plaintiff claims that he is entitled to the pay of lieutenant commander from the date stated in his commission by virtue of the act of March 4, 1913, 37 Stats., 892. The auditor ruled adversely to his claim, which ruling was approved by the comptroller.
It is to be noted that the examination which plaintiff had when he was found incapacitated for active service was a physical examination. He did not fail professionally. Section 1505 of the Revised Statutes, as amended by the act of March 11, 1912, 37 Stats., 73, provides that any officer of the Navy on the active list below the rank of commander who, upon examination for promotion, is found not professionally qualified shall be suspended from promotion for a period of six months from the date of approval of said examination and shall suffer a loss of numbers. That section, referring as it does to professional qualification, is not applicable in a case where, the examination developing merely a physical incapacity for active service, the officer is not reported as professionally disqualified. On the contrary, the reverse may be inferred. In the instant case the order was that the plaintiff report to a naval hospital for *239 operative treatment and be reexamined for promotion thereafter. When reexamined he was found professionaly qualified and Avas appointed and commissioned.
The act of March 4, 1913, supra, provides that when an officer of the Navy is advanced in grade or rank pursuant to law he shall receive the pay and allowances of the higher grade or rank from the date stated in his commission. We have had occasion in several cases to consider the effect of that act. Smith Case, 50 C. Cls., 244; Crapo Case, 50 C. Cls., 342; Toulon Case, 51 C. Cls., 87. There is no inconsistency between these cases. The court has not held, and does not now hold, that said act authorizes the fixing of a date in the commission from which the rank begins which is controlling on the court regardless of whether the promotion was made pursuant to law or not. In the Smith case the plaintiff had failed to professionally qualify, and under the statute applicable in his case was suspended from promotion for one year. He suffered the loss of that one year, and the date of his commission showed a recognition of that fact.
In Crapo’s case the defendants contended that there was no vacancy to which the claimant could have been appointed. The claimant insisted there was a vacancy and that the act of March 4, 1913, was applicable. The court, speaking through Judge Booth, said the issue was limited to this: “Was the claimant eligible to the office of passed assistant paymaster on the date stated in his commission? If he was, he is entitled to his pay and allowances;” and again (p. 343) it is said: “ The provisions of the statute having been invoked in behalf of the claimant, the case resolves itself into the single issue, and that is, Was the claimant’s status such as to entitle him to pay from the date stated in his commission'? Plainly it was not said or meant that if the status of the claimant had been such that he was not entitled to pay from the date stated in the commission the court Avould ignore that fact and be governed by the date stated. In both the Smith and Crapo cases it appeared that the claimant was eligible to promotion on the date stated in the commission, and effect was given to the commission accordingly. But in the Toulon case the claimant was not eligible to promotion *240 on the date stated in the commission, and the court refused to give recognition to the erroneous date. When Toulon was found professionally disqualified the statute applicable in his case required his suspension from promotion for a period of six months. The date of rank stated in his commission showed that effect had not been given to that statute, and we hence held that he had not been advanced in grade or rank pursuant to law and, therefore, that he did not come within the provisions of the act of March 4,1913.
That act provides for pay for a constructive service. It contemplates that the officer will be advanced under and in accordance with the law and that the date from which the higher rank begins will be stated in pursuance of the law. Conversely, it does not contemplate that an arbitrary date will be chosen, nor that an officer will be advanced in contravention of the positive requirement that he shall not be promoted or advanced while he is under suspension for a failure to professionally qualify when examined. The statute does not provide that when an officer is advanced in grade or rank he shall have the pay and allowances of the higher grade or rank from the date stated in his commission, but it does provide that when the advancement is “ pursuant to law ” he shall have them. When he is advanced or promoted contrary to law, if such a case is supposable, or where the period of suspension required by section 1505, for instance, is overlooked or disregarded, he can not be said to have been advanced pursuant to law; and in such case he can not be entitled to the pay and allowances of the higher grade from the date stated in his commission.
We are led to refer to said cases in order to set at rest the contention that the date “ stated in the commission ” is controlling. We can not change the date where it appears to be erroneous, but we can refuse relief where the date is erroneous.
In the instant case no such condition arises. The plaintiff was found professionally qualified. There was a vacancy to which he was eligible, and it was kept open awaiting his examination. He was properly commissioned to rank from *241 the date of his eligibility to the vacancy in the higher grade or rank.
In the brief for the Government a question is suggested which is, also referred to in the Comptroller’s decision, going to the right to hold “ open ” the vacancy until the plaintiff could be reexamined physically.
The facts show that the report of the board of naval surgeons in their finding and recommendation stated that plaintiff was “ incapacitated for service by reason of right, direct inguinal hernia contracted in the line of duty, and he is therefore not qualified to perform all his duties at sea, and we do not recommend him for promotion.” The Bureau of Medicine and Surgery, on September 10, 1914, recommended that he “be ordered to naval hospital for operative treatment, and that he be reexamined when he has recovered to determine his physical fitness for promotion.” On September 11, 1914, the Secretary of the Navy, reciting the recommendation of the Bureau of Medicine and Surgery, transmitted the record to the President with his advice “ that the findings and recommendation of the board of medical examiners in this case be approved, with a view to effecting the recommendation of the Bureau of Medicine and Surgery in its above-quoted indorsement.” On September 15, 1914, the President’s indorsement was made as follows: “ The finding and recommendation of the board in this case are approved.” Thereafter the plaintiff was admitted to the naval hospital for operative treatment and was discharged from the same on January 4, 1915. On February 12, 1915, he was again ordered for examination for the promotion, and, having successfully passed that examination and also the professional examination, he was promoted, as has been stated.
Upon the said facts a conclusion is sought to be deduced that on account of his disqualification for promotion on September 15,1914, the plaintiff relinquished any seniority right he possessed to the vacancy to which he was subsequently promoted. We do not think that such a conclusion is properly deducible under the circumstances of this case. It would be too strict if not a strained construction of the President’s action to say that he merely approved the finding of *242 the board of medical examiners when as a matter of fact he had before him not only their report but the recommendation of the Bureau of Medicine and Surgery and the advice thereon of the Secretary of the Navy. It will be noted that the board of medical examiners did not recommend plaintiff for promotion, and that their recommendation was of a negative character. If approved as a recommendation that the officer be not promoted because of physical defects it would seem that the course to follow upon the approval of that recommendation would lead to a retirement of the officer. Such a course was not pursued, and in view of the course that was subsequently taken it would seem that the construction adopted and acted upon, that the Executive had approved the recommendation of the Bureau of Medicine and Surgery which accompanied the report, indorsed as it was by the Secretary of the Navy, that the plaintiff be reexamined after receiving operative treatment, can not be said under the facts of the case to have been an unreasonable construction. In the event of a failure of an officer to professionally qualify the statute provides a penalty of suspension for a period of time and loss of numbers. We have not been shown any statute which deals specifically with a failure to qualify physically on examination further than the general statute, section 1493 of the Bevised Statutes, providing that no officer shall be promoted to a higher grade on the active list until he has been examined and pronounced physically qualified to perform all of his duties at sea. When, finding the law silent on the question as to whether another examination is allowable, those in authority decide upon a course which gives the officer a reasonable opportunity to be treated for a temporary physical ailment and then be reexamined we do not see how their action in the premises is revisable by this court. It would seem, however, that the officer’s seniority right was coincident with his status as a lieutenant in the Navy, and so long as he remained a lieutenant the other right attached. He was not retired but was promoted to the vacancy which had existed all the time and to which he was eligible on the 1st day of July, 1914.
*243 We have the right to inquire as to whether there was a vacancy (Crapo’s case, 50 C. Cls., 337) and we have the right to inquire whether the date of the commission was prior to any vacancy or whether any positive law had been ignored in fixing the date of rank in the commission. Toulon’s case, 51 C. Cls., 87. In other words, speaking generally, when asked to apply the act to March 4, 1913, we may inquire whether the officer is advanced in grade or rank pursuant to law; but in cases of this kind, unless something more appears than does in this case, we can not look into a matter relating purely to administrative action.
The plaintiff, while yet a lieutenant in the Navy, was appointed and served for one month and 20 days as aid on the staff of the commander of the Third Division of the Atlantic Fleet, for which he was paid $20.83, and the question is, whether that sum should be checked against him. His appointment as aid was lawful; he rendered the service, and was properly paid. Later he was appointed lieutenant commander, and as lieutenant commander he could not have been paid for services as aid. Knox case, ante, p. 22. But the plaintiff was not a lieutenant commander when he acted as aid, and did not become lieutenant commander in fact until his appointment and commission in April, 1915. The act of March 4,1913, as also the act of 1874, entitles him on promotion to receive the pay and allowances of the higher grade from a period anterior to his actual appointment and entering upon the office to which he was promoted. The right secured to him by the terms of the statute can not be limited by the fact that during the period of constructive service, for which the law provides he shall be paid, he received payment for services actually rendered in another capacity, which another statute authorized. Being entitled to the pay and allowances of a lieutenant commander from the date stated in his commission in this case there should be deducted the pay and allowances to him as lieutenant from July 1, 1914, but no deduction can be made of the amount paid him for the special service rendered as aid.
It follows that plaintiff is entitled to be paid the difference between the pay and allowances of a lieutenant and that of a *244 lieutenant commander in the Navy which have been withheld from him or checked against him, amounting to $625.28. Judgment in that sum in his favor will be entered accordingly. It is so ordered.
Hat, Judge, BarNey, Judge, and Booth, Judge, concur.
DowNey, Judge, took no part in the decision of this case.